UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

KEVIN M. JONES,
    Plaintiff,

v.   05-CV-3024

SGT. WILLIAM CAREY,
    Defendant.

### Order

This is an Eighth Amendment, excessive force claim pursuant to 42 U.S.C. § 1983. Defendant Carey, the sole remaining defendant, has moved for summary judgment.

While Carey's motion is thorough, well-supported, and persuasive, the resolution of the plaintiff's claim requires credibility determinations not allowed on summary judgment. The motion must therefore be denied and the case set for trial.

### Summary Judgment

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);Fed. R. Civ. P.56(c). This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).

"At summary judgment a court may not assess the credibility of witnesses, choose

between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### Undisputed Facts

The plaintiff was convicted on a drug charge and sentenced to 21 years in the IDOC on March 19, 2003. He filed motions to reduce his sentence in Sangamon County Court. On November 19, 2004, the plaintiff was transported from Logan Correctional Center to Sangamon County Jail for a hearing on his post-trial motions. At the end of the hearing, all the plaintiff's motions were denied and he was returned to the booking area of Sangamon County Jail, for return to Logan. Defendant Carey, a sergeant with the Sangamon County Sheriff's Office and shift commander at the time, was in the booking area. Carey asked the plaintiff how his court date went. What happened after that is disputed, at least until the point the plaintiff wound up in the transport van on his way back to Logan.

When the plaintiff returned to Logan on the evening of November 19, 2004, he filed an injury report, claiming that defendant Carey had used excessive force on him at the Sangamon County Jail. The inmate injury report states:

> Inmate has slightly edematous and reddened areas on medial and lateral sides of right wrist, full range of motion of right wrist and hand, has small abrasion on lateral surface of right wrists, no bleeding noted, nail beds consistent with quick capillary refill and pink, no c/o numbness or tingling, no deformity noted. Alteration in comfort. Cleaned abrasion with sterile NS, applied Neosporin Ointment and band aids, told Inmate to return to HCU as needed.

The report indicates that it was reviewed by a physician, who in turn indicated that the plaintiff could return on an as-needed basis. The medical records report no further treatment for the injury. According to the plaintiff's deposition, he received a tetanus shot and Tylenol, and later on anti-depressant medication for his continued pain and distress.

### Disputed Facts and Analysis

Defendant Carey avers that the plaintiff was unruly and insulting, addressing foul and abusive threats and insults to Sangamon County Correctional Officers, disregarding orders to cease, and generally creating a dangerous disturbance that had the potential to escalate, given the other inmates in the booking area. Carey determined the plaintiff should be removed from the area immediately, before the situation escalated. Carey avers that the only force he used on the plaintiff was to escort him using an approved "come-along" technique, which involves placing one hand on the back of an inmate's arm and the other on his wrist, and applying pressure when

necessary to counter resistance. Carey asserts that the plaintiff resisted him, twisting and pulling away, dragging his feet, and continuing to shout obscenities. Carey denies that the plaintiff was thrown in the transport van, but instead that avers that the plaintiff stepped up into the van on his own.

To support his motion for summary judgment, Carey offers his own detailed affidavit, along with detailed affidavits of officers who witnessed parts or all of the incident. He also offers the plaintiff's deposition, a picture of the plaintiff's wrists after the incident (which is indiscernible on the court's electronic copy), and the relevant portion of the plaintiff's medical records.

In contrast, the plaintiff's affidavit in response (d/e 31) is vague and conclusory.[1] He asserts that the defendants' version is a complete fabrication and attempts to discredit the affidavits by pointing out "missing statements." The plaintiff avers that he was:

> not loud or boistrous [sic], nor was he insulting or profane. He simply questioned the Defendant's reason and intent behind the questions concerning the outcome of his court hearing, and Defendant, taking umbrage at this correct challenge to his authority and intent, attacked the Plaintiff in an unlawful manner and with the unnecessary use of force, with the specific intent to commit harm and to inflict pain and humiliation!!" (d/e 31, p.2).

The plaintiff's testimony in his deposition is more detailed. Though he does not submit his deposition in response, it is part of the record and properly considered to determine whether a disputed fact exists. *See Payne*, 337 F.3d at 771 (non-movant could rely on deposition testimony as evidence). The plaintiff testified that Carey called him a "half-breed bitch," "wasn't shit," "numb nuts," among other derogatory names. The plaintiff protested verbally to Carey's verbal abuse and engaged in some name-calling as well. In response, Carey told officers to bring around the state vehicle and came at the plaintiff, grabbing and dragging him by his shackles, and holding his arm and wrist in an awkward and painful position ("hurting me real bad"; "I was like, "Man, you're grabbing me, you're hurting me."). According to the plaintiff, Carey dragged him to the van in this manner, asking the plaintiff how it felt, and then threw the plaintiff in the van (though the plaintiff also says a different officer did the throwing). Carey then warned the plaintiff that Carey would "finish the job" if the plaintiff came back, and the plaintiff replied something to the effect that, "By the time I get out, I'll be pissing on your grave." The plaintiff testified that his wrists were bleeding, purple, and were "swollen real bad" and that his "device bracelet" had been broken. He avers he bled where he wristband was located for two to three days, and that he has scars. According to the plaintiff, Carey "had no right putting his hands on me, bottom line." (Plaintiff's Dep., Ex. 3, d/e 27).

---

[1] He submitted another, more detailed affidavit on June 6, 2006 (d/e 33), well past the deadline for responding and without a certificate of service. The Court does not consider the affidavit.

3

On summary judgment, the Court must "avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)(citation omitted). "[S]ummary judgment cannot be used to resolve swearing contests between litigants." *Id.* Excessive force claims in particular often come down to such a swearing contest and, for that reason, often cannot be resolved at the summary judgment stage. *See also Lax v. City of South Bend*, 449 F.3d 773, 774 (7th Cir. 2006)(court cannot equate vagueness in affidavit regarding excessive force to absence of evidence–court could have asked for more detail).

Applying this legal standard, the Court believes the plaintiff's excessive force claim cannot be resolved without a credibility determination. Crediting the plaintiff's version, and mindful of his *pro se* status, Carey verbally taunted the plaintiff, and then reacted with excessive force to the plaintiff's verbal response to those taunts. According to the plaintiff (and drawing liberal inferences), no force at all was necessary to escort him to the van–he was already on his way there, being escorted by the IDOC officers. Therefore, Carey's motion for summary judgment must be denied and this case set for trial.

### Trial by Video Conference

Ideally, a plaintiff should be present at the trial of his own civil rights lawsuit, and the "decision to deny a prisoner the opportunity to be physically present at a civil rights trial he initiates is not one that should be taken lightly." *Thornton v. Snyder*, 428 F.3d 690, 697-699 (7th Cir. 2005)(discussing trial by video and affirming this court's decision to hold trial by video under abuse of discretion standard).

The claim here is simple–one alleged excessive force incident–and will likely take one day. The likely witnesses, along with the defendant, reside in or near Springfield, about 90 miles from the Court in Urbana. The plaintiff is now incarcerated in Shawnee Correctional Center, a high-medium security institution in Southern Illinois, about 200 miles from the Courthouse. The expense of transporting the plaintiff 200 miles for a one-day trial, and keeping him incarcerated in another facility overnight, are relevant considerations. Shawnee is equipped with video-conferencing equipment, so the plaintiff would not have to be transported anywhere if the trial were held by video. The defendants' costs are also relevant, particularly since they will likely not be able to recoup any costs from the plaintiff even if Carey wins the case.

More importantly, the court is concerned about the potential security risk presented by the plaintiff. Carey's description of the plaintiff's behavior at the Sangamon County Jail supports an inference that the plaintiff's personal presence at his trial could present serious security risks. While the Court cannot credit Carey's descriptions of the plaintiff's behavior on summary judgment, those descriptions are relevant to assessing the security risk the plaintiff could present at trial and during transport. The affidavits submitted by Carey support an inference that the plaintiff was verbally aggressive, using foul and abusive language to taunt and threaten officers. Those affidavits also support an inference that the plaintiff refused to follow direct orders and became physically combative and difficult to control, requiring the presence of

several officers to ensure the plaintiff's escort to the transport van.  The Court notes as well that the plaintiff is now

incarcerated in a high-medium security prison, arguably connoting an increased security risk as compared to the medium security prisons in which he was previously incarcerated.  Lastly, the record arguably shows a history of animosity between Carey and the plaintiff that continues, counseling against their personal presence together in the courtroom.

In sum, substantial time, resources, and risk will be avoided by conducting the entire trial by video conference.  Fundamental fairness requires that all the parties, witnesses and attorneys appear by video, not just the plaintiff.  *Lemmons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993) ("There is a constitutional right to a fair trial in a civil case.  It is difficult, but essential to maintain this right for prisoner-plaintiffs.").  This will ensure equal footing for each party's presentation.  The jury, judge and court reporter will be in the courtroom.  The interactive video conferencing will be conducted with a split screen that will enable the participants to see each and hear each other simultaneously.  The plaintiff and defendant will have an opportunity to see and question each potential juror, to present any witnesses or evidence, to cross examine witnesses, and to argue to the jury.   Each party will be able to respond and react to developing testimony or facts, and will be able to observe the jury's reactions.

IT IS THEREFORE ORDERED:

1) The defendant's motion for summary judgment is denied (d/e 26) ;

2) A final pretrial conference is scheduled for January 10, 2007, at 1:30 p.m. by video conference.  The parties are directed to confer and submit the proposed final pretrial order by December 18, 2006.  The defendants bear the responsibility for preparing the final pretrial order pursuant to Local Rule 16.3-4(H).  *See Appendix 2* to Local Rules for a sample form.  www.ilcd.uscourts.gov/local rules .  The proposed final pretrial order must include the locations from which the parties, attorneys and witnesses will appear by video, to enable the clerk to issue the necessary video writs.

3) By January 8, 2007, a party shall file with the Court all exhibits he intends to introduce at trial, with copies to the opposing party.

4) A jury trial is scheduled for January 18, 2007, at 9:00 a.m., by video conference.

5) If any party objects to holding the trial by video conference, said party shall file a "Motion to Personally Appear for Trial" within 30 days of the entry of this order, stating the objections thereto, reasons therefore, and attaching any relevant documents in support.  If the defendant, his witnesses, and his attorney(s), do not have a location from which they can appear by video for the trial, the defendant shall file a Motion to Personally Appear for Trial in accordance with this

paragraph.  A hearing will be held on the motion if necessary.

Enter this 25th day of August, 2006.

                                  **s\Harold A. Baker**

                                  _____
                                  HAROLD A. BAKER
                                  UNITED STATES DISTRICT JUDGE